UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
THE ANNUITY, PENSION, WELFARE, TRAINING
AND LABOR MANAGEMENT COOPERATION
TRUST FUNDS OF THE INTERNATIONAL UNION
OF OPERATING ENGINEERS LOCAL 14-14B, AFL-
CIO, BY THEIR TRUSTEES EDWIN L. CHRISTIAN,
JOHN CRONIN, THOMAS D. GORDON, KENNETH
KLEMENS, JR., TYREEF BEVEL, JOHN F. O'HARE,
WILLIAM TYSON and MICHAEL SALGO, and
INTERNATIONAL UNION OF OPERATING
ENGINEERS LOCAL 14-14B, AFL-CIO, BY ITS
BUSINESS MANAGER EDWIN L. CHRISTIAN

**REPORT AND
RECOMMENDATION**

23-CV-5434
(Donnelly, J.)
(Marutollo, M.J.)

                   Plaintiffs,

      v.

C.M. ASHLAND CONSTRUCTION CORP.,

                   Defendant.
-------------------------------------------------------------------X

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

Plaintiffs, the Annuity, Pension, Welfare, Training and Labor Management Cooperation

Trust Funds of the International Union of Operating Engineers Local 14-14B, AFL-CIO, by their

Trustees Edwin L. Christian, John Cronin, Thomas D. Gordon, Kenneth Klemens, Jr., Tyreef

Bevel, John F. O'Hare, William Tyson, and Michal Salgo (the "Funds"); and the International

Union of Operating Engineers Local 14-14B, AFL-CIO, by its Business Manager Edwin L.

Christian ("Local 14") (collectively, "Plaintiffs"), commenced this action on July 18, 2023 against

Defendant CM Ashland Construction Corp., pursuant to the Employee Retirement Income

Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA"), and Section 301 of the

Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 141, *et seq.* (the "LMRA").

*See* Dkt. 2 ("Compl.") ¶ 1.

In the Complaint, Plaintiffs seek an order compelling Defendant to submit to an audit of its books and records. Compl. ¶ 1. Plaintiffs further seek to recover delinquent contributions and payments as identified through the audit, as well as accumulated interest, liquidated damages, audit costs, and attorneys' fees and costs. *Id.* at 10. Defendant failed to file an answer or otherwise move with respect to the Complaint in a timely manner, and the Clerk of the Court entered a default against Defendant on August 24, 2023. *See* Dkt. No. 10. To date, Defendant has not appeared in the case.

Currently pending before this Court, upon referral from the Honorable Ann M. Donnelly, United States District Judge, is Plaintiffs' motion for default judgment. *See* Dkt. Nos. 12-16; Aug. 30, 2023 Referral Order.[1] For the reasons set forth below, this Court respectfully recommends that Plaintiffs' motion be granted in its entirety.

## I.    <u>Background</u>

### A.    **Factual Allegations**

The following facts are taken from the Complaint and Plaintiffs' motion for default judgment; the facts are assumed to be true for the purposes of this motion. *See Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV) (MMH), 2023 WL 6338666, at *1 (E.D.N.Y. Sept. 29, 2023) (citing *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187-90 (2d Cir. 2015)).

Local 14 is a Queens-based labor union that represents employees who work in the construction industry throughout New York City. Compl ¶¶ 3, 11; Dkt. No. 14 ("Monterroso Aff.") ¶ 3. The Funds are a group of joint trustee funds, established by various trust agreements, pursuant to Section 302 of the LMRA, 29 U.S.C. § 186 (the "Trust Agreements"). Compl. ¶ 4. Its

---

[1] The referral was made to then-United States Magistrate Judge Ramon E. Reyes, Jr. Upon Judge Reyes's appointment as a United States District Judge, the matter was re-assigned to the undersigned.

trustees are Edwin L. Christian, John Cronin, Thomas D. Gordon, Kenneth Klemens, Jr., Tyreef Bevel, John F. O'Hare, William Tyson, and Michael Salgo (the "Trustees"). *Id.* ¶¶ 5-6. The Funds provide fringe benefits to eligible employees, retirees, and their dependents. *Id.* ¶¶ 7-9. The Funds constitute employee benefit plans as defined in Sections 3(1)-(3) and 502(d)(1) of ERISA, 29 U.S.C. § 1002(1)-(3), 1132(d)(1), and multi-employer plans as defined in Sections 3(37) and 515 of ERISA, 29 U.S.C. §§ 1002(37), 1145. *Id.*

Defendant is a New Jersey-based construction company formed under New York law. Compl. ¶¶ 13-15; Dkt. No. 13 ("Steinberg Decl.") ¶ 6. On July 9, 2020, Local 14 and Defendant entered into a collective bargaining agreement (the "CBA") pursuant to which Defendant agreed to be bound by the terms of various association collective bargaining agreements entered into by Local 14 with the General Contractors Association of New York ("GCA"). Compl. ¶¶ 17, 24; Steinberg Decl. ¶¶ 3, 6; Exs.[2] D-1, D-2 (copies of applicable agreements between Local 14 and GCA ("Local 14/GCA CBAs")). Defendant also agreed to be bound by the various trust agreements establishing the Funds. Compl. ¶ 24; Monterroso Aff. ¶ 4. The terms of the Trust Agreements and the Local 14/GCA CBAs are incorporated by reference into the CBA. Compl. ¶ 24; Monterroso Aff. ¶ 4.

The CBA requires Defendant to make certain contributions and payments to the Funds based on the number of hours worked by each employee. Compl. ¶ 24; *see also* Steinberg Decl. ¶ 7. Defendant is also required to produce its books and records for inspection upon receipt of an audit demand from the Trustees. Compl. ¶ 25; *see also* Steinberg Decl. ¶ 8. Plaintiffs claim that Defendant has underreported the number of employees, hours worked, and wages paid, resulting

---

[2] All exhibit references are to those attached to the Steinberg Decl. submitted in support of Plaintiffs' motion for default judgment. *See* Dkt. Nos. 13-1 – 13-12.

3

in underreported contributions and payments owed to the Funds.  Compl. ¶ 26.  Plaintiffs served

Defendant with an audit demand, and Defendant did not respond.  *Id.* ¶ 27.

### B.    Procedural History

Plaintiffs' Complaint asserts three causes of action against Defendant: (1) an audit demand

pursuant to Section 209(a)(1) of ERISA, the Trust Agreements, and the CBA (Compl. ¶¶ 21-27);

(2) breach of the CBA for failure to make required contributions (*id.* ¶¶ 28-32); and (3) violation

of Section 515 of ERISA for failure to make required contributions (*id.* ¶¶ 33-37).  Plaintiffs seek

an order requiring Defendant to produce its books and records[3] for an audit of the period of July

1, 2018 through June 30, 2023.[4]  *Id.* ¶ 27.  Plaintiffs also seek payment of delinquent contributions,

along with prejudgment interest, liquidated damages, auditor costs, and attorneys' fees and costs.

*Id.* ¶ 36.

Plaintiffs served Defendant with the Summons and Complaint on July 28, 2023 by leaving

the papers with an authorized agent at Defendant's principal place of business.  Dkt. No. 8;

Steinberg Decl. ¶ 4.  Despite proper service, Defendant failed to timely appear, answer, or

otherwise respond to the Complaint.  Plaintiffs sought a certificate of default against Defendant on

August 22, 2023 (Dkt. No. 9), which was granted by the Clerk of Court on August 24, 2023 (Dkt.

No. 10).

On August 28, 2023, Plaintiffs moved for default judgment.  *See* Dkt. Nos. 12-16.

Defendant was served with a copy of the motion and accompanying papers at its principal place

---

[3] Specifically, Plaintiffs seek Defendant's tax forms 941s, quarterly payroll tax forms a/k/a NYS-45 tax forms, corporate payroll records (including information identifying hours paid and gross wages), cash disbursements records, tax forms W-2s, payroll reports (provided to the union or fund office, if applicable), and canceled checks.  *See* Steinberg Decl. ¶ 8.

[4] Plaintiffs later limited the scope of the audit period to July 29, 2020 through June 30, 2023.  *See* Dkt. No. 15, at 8.

of business, 40 Tudor Drive, Clark, New Jersey 07066.  Dkt. No. 16.  To date, Defendant has still failed to appear or respond to the motion for default judgment.

## II.   **Standard for Default Judgment**

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011).  At the first step, the Clerk of Court enters a party's default after an affidavit or other evidence shows that the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend."  Fed. R. Civ. P. 55(a); *see Esquivel*, 2023 WL 6338666, at *3 ("when a party uses an affidavit or other proof to show that a party has 'failed to plead or otherwise defend' against an action, the clerk shall enter a default." (citing Fed. R. Civ. P. 55(a)).  "If a claim is for 'a sum certain or a sum that can be made certain by computation,' the clerk can enter judgment."  *Id.* (citing Fed. R. Civ. P. 55(b)(1)).  At the second step, and "[i]n all other cases, the party must apply to the court for a default judgment."  *Id.* (citing Fed. R. Civ. P. 55(b)(2)).

The Second Circuit "generally disfavor[s]" default judgment and has repeatedly expressed a "preference for resolving disputes on the merits."  *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).  Nevertheless, in evaluating a motion for default judgment, a court accepts as true the plaintiff's well-pleaded factual allegations, except those relating to damages.  *Greyhound Exhibitgroup*, *Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974).  A plaintiff bears the burden of alleging "specific facts," rather than "mere labels and conclusions" or a "formulaic recitation of the elements," so that a court may infer a defendant's liability.  *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *3 (E.D.N.Y. Sept. 1, 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), *report and recommendation adopted*, 2015 WL 5561180 (E.D.N.Y. Sept.

21, 2015)).  The decision to grant or deny a default motion is "left to the sound discretion of a district court."  *Esquivel*, 2023 WL 6338666, at *3 (quoting *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)); *see Chen*, 2023 WL 2583856, at *7 (the court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established.") (quotations and citation omitted).

## III.    Jurisdiction and Venue

### A.    Subject Matter Jurisdiction

The Court has original jurisdiction over Plaintiffs' ERISA claim pursuant to 29 U.S.C. § 1132(e)-(f) and 28 U.S.C. § 1331.  The Court has original jurisdiction over Plaintiffs' allegations relating to breach of the CBA pursuant to 29 U.S.C. § 185(a) and 28 U.S.C. § 1331.

### B.    Personal Jurisdiction

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant."  *Snowing Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010) (citation omitted).

The Court has personal jurisdiction over Defendant.  Plaintiffs properly served Defendant with the summons and Complaint on July 28, 2023 by leaving the papers with an authorized agent at Defendant's principal place of business.  *See* Dkt. No. 8; Steinberg Decl. ¶ 4; *see also* Fed. R. Civ. P. 4(h)(1)(B).  In addition, New York state has general jurisdiction over corporations formed under its laws and operating within the state.  *See Trustees of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. USA Roofing Co. Corp.*, No. 22-CV-5053 (FB) (PK), 2023 WL 6318618, at *4 (E.D.N.Y. Sept. 12, 2023), *report and recommendation adopted*, 2023 WL 6308085 (E.D.N.Y. Sept. 28, 2023).  Defendant is a corporation formed under New York law. Compl. ¶ 13.  The Court therefore has personal jurisdiction over Defendant.

### C.    Venue

"[A] civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."  28 U.S.C. § 1391(b)(1).  A corporation is deemed to be a resident of "any district" in "a state which has more than one judicial district and in which . . . [that] corporation is subject to personal jurisdiction at the time an action is commenced."  *Id.* § 1391(d).  Venue is proper in this district because Defendant is subject to personal jurisdiction in this district.

## IV.    **Procedural Compliance with Local Civil Rules**

"A motion for default judgment will not be granted unless the party making the motion adheres to all of the applicable procedural rules."  *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers, Loc. 15, 15A, 15C & 15D, AFL-CIO v. Allstate Mapping & Layout, LLC*, No. 22-CV-1831 (PKC) (TAM), 2023 WL 1475389, at *1 (E.D.N.Y. Feb. 2, 2023) (quoting *Century Surety Company v. Adweek*, No. 16-CV-335 (ENV) (PK), 2018 WL 10466835, at *1 (E.D.N.Y. Jan. 9, 2018)).  "[L]octal rules have the force of law, as long as they do not conflict with a rule prescribed by the Supreme Court, Congress, or the Constitution."  *See Fin. Servs. Vehicle Tr. v. Osmeña*, No. 22-CV-7491 (RPK) (CLP), 2023 WL 7000935, at *2 (E.D.N.Y. Aug. 15, 2023) (citations and quotation marks omitted).

Under Local Civil Rule 55.2(b), a "party seeking a judgment by default . . . shall append to the application (1) the Clerk's certificate of default, (2) a copy of the claim to which no response has been made, and (3) a proposed form of default judgment."  And, under Local Civil Rule 55.2(c), the party must mail the motion, with these three items, to "the last known residence of such party (if an individual) or the last known business address of such party (if a person other than an individual)."  "Local Rule 55.2 is strictly construed, and failure to comply with the rule is

alone a basis to deny the motion for default judgment." *Santacruz v. Blok Chocolatier LLC*, No. 19-CV-544 (EK) (SJB), 2021 WL 4341103, at *2 (E.D.N.Y. June 23, 2021), *report and recommendation adopted*, 2021 WL 4340963 (E.D.N.Y. Sept. 23, 2021).

Here, the Court finds that Plaintiffs have complied with Local Civil Rules 55.2(b) and 55.2(c). Plaintiffs attach the Complaint, the certificate of default, and a proposed form of default judgment to their motion, as required under Local Civil Rule 55.2(b). *See* Dkt. No. 12-1; Steinberg Decl., Exs. A, B. In addition, Plaintiffs mailed a copy of the motion to Defendant at its last known business address, 40 Tudor Drive, Clark, New Jersey 07066. *See* Dkt. No. 16; Compl. ¶ 13.

Accordingly, Plaintiffs have complied with Local Civil Rules 55.2(b) and 55.2(c).

**V.    Liability**

**A.    Standing**

ERISA is a comprehensive federal law that sets standards for private retirement and health plans, governs their administration, and generally preempts state regulation of benefits plans. *See* ERISA § 514(a) (29 U.S.C. § 1144(a)). "ERISA vests the Court with jurisdiction over civil actions brought by fiduciaries of employee benefit plans to enforce provisions of such plans." *Trustees of Loc. 7 Tile Indus. Welfare Fund v. City Tile, Inc.*, No. 10-CV-322 (SJ) (ALC), 2011 WL 917600, at *1 (E.D.N.Y. Feb. 18, 2011), *report and recommendation adopted*, 2011 WL 864331 (E.D.N.Y. Mar. 10, 2011); *see also* 29 U.S.C. § 1132(a)(3) (fiduciaries of a plan may bring an ERISA action).

Section 301 of the LMRA provides a federal cause of action for "violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). Unions and employee benefit funds have standing to sue under the LMRA. *See Metal Lathers Local 46 Pension Fund v. River Ave. Contracting Corp.*, 954 F. Supp. 2d 250, 256 (S.D.N.Y. 2013) (holding that benefit funds have standing to sue under the

LMRA for an employer's failure to make contributions required under CBA with union) (citations omitted); *Legal Aid Society v. City of New York*, 114 F. Supp. 2d 204, 214 (S.D.N.Y. 2000) ("Section 301 generally grants unions standing to vindicate employee rights pursuant to a collective bargaining agreement[.]").

Here, Plaintiffs have established their standing under both ERISA and the LMRA. The Trustees are "fiduciaries" within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21). *See* Compl. ¶ 5. The Funds are multi-employer/employee benefit plans under ERISA. *Id.* ¶ 9. Finally, Local 14 is a labor organization representing employees in an industry affecting commerce. *Id.* ¶ 11. Accordingly, Plaintiffs have standing to bring their claims against Defendant.

### B.    Audit Demand

Plaintiffs seek an order requiring Defendant to submit to an audit of its books and records for the period of July 29, 2020 through June 30 2023. Compl. ¶¶ 21-27; Dkt. No. 15, at 11-14. Plaintiffs claim they are entitled to this audit pursuant to both the terms of the CBA, which incorporate by reference the terms of the Trust Agreements, and ERISA.

Pursuant to Section 302(b)(20) of ERISA, "[i]n any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan . . . [such] legal or equitable relief as the court deems appropriate." "Courts routinely cite this provision to compel an audit of an employer's books and records." *Trustees of the Plumbers Loc. Union No. 1 Welfare Fund v. Alessandro Plumbing, Inc.*, No. 16-CV-3866 (RJD) (RER), 2017 WL 3927491, at *2-3 (E.D.N.Y. Apr. 26, 2017), *report and recommendation adopted*, 2016 WL 9632378 (E.D.N.Y. May 25, 2017) (recommending "that the Court grant Plaintiffs' request for an order requiring [the defendant entity] to submit to an audit of its books and records within 30 days of service of this judgment.").

The Trust Agreements provide that the Trustees "have the right to audit, examine[,] and make copies of all or any part of the books and records of any Employer, including but not limited to payroll books and records, cash books, ledgers, contracts, tax returns or reports, and any other book or record which the Trustees deem necessary or desirable in connection with the proper administration of this Trust." Compl. ¶ 25; Steinberg Decl. ¶ 8, Exs. E-I. These agreements, and the corresponding obligation to comply with an audit request, are incorporated by reference into the CBA. Compl. ¶ 24.

In addition, under Section 209(a)(1) of ERISA, employers have an obligation to maintain certain books and records so that employee benefit plans can review them to determine whether contributions are due. *See* 29 U.S.C. § 1059(a)(1) ("[E]very employer shall . . . maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees."); *La Barbera v. Fed. Metal & Glass Corp.*, 666 F. Supp. 2d 341, 347 (E.D.N.Y. 2009) (holding defendant liable under Section 209 for failure to maintain records).

Plaintiffs have established their right to an audit of Defendant's books and records. Plaintiffs alleged that under ERISA, Defendant was required to maintain books and records related to fund contributions, and under the Trust Agreements and CBA, they were required to submit to an audit if requested, but they failed to do so. While neither the Complaint nor the materials provided in support of the default judgment motion indicate when, or in what form, Plaintiffs made the audit demand, Defendant's failure to respond to the Complaint entitles Plaintiffs to an inference that the audit demand was made and ignored. *See Annuity, Welfare & Apprenticeship Skill Improvement & Safty Funds of Int'l Union of Operating Engineers, Loc. 15, 15A, 15C & 15D, AFL-CIO by Callahan v. Regal USA Concrete, Inc.*, No. 23-CV-1209 (MKB) (SJB), 2024 WL 79671, at *4 (E.D.N.Y. Jan. 8, 2024) (inferring that audit demand was sent and ignored due to

defendant's default); *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers, Loc. 15, 15A, 15C & 15D, AFL-CIO v. Trac Constr. Grp., Inc.*, No. 22-CV-1935 (ENV) (RER), 2022 WL 7810540, at *3 (E.D.N.Y. Oct. 4, 2022) (holding that defendant was liable for failing to permit an audit of its books and records).

Accordingly, this Court finds that Plaintiffs have established their right to an audit of Defendant's books and records.

## C.    Breach of the CBA

Plaintiffs also allege that Defendant breached the CBA by failing to make required contributions for its employees.  As noted above, a breach of a CBA is a claim under Section 301 of the LMRA.  And thus, a breach of a CBA based on a failure to make employee benefit contributions and payments is actionable under Section 301.  *See, e.g.*, *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers, Loc. 15, 15A, 15C & 15D, AFL-CIO v. Genrus Corp.*, No. 20-CV-4980 (MKB) (RER), 2021 WL 4755704, at *2 (E.D.N.Y. Aug. 16, 2021) (collecting cases), *report and recommendation adopted*, 2021 WL 3928952 (E.D.N.Y. Sept. 2, 2021); *Gesualdi v. D & E Top Soil & Trucking Inc.*, No. 11-CV-5938 (NG) (MDG), 2013 WL 1729269, at *3 (E.D.N.Y. Mar. 26, 2013) (holding that defendant's failure to pay contributions when they were due was a breach of the CBA and, in turn, a violation of LMRA § 301(a)).

Here, the CBA obligates Defendant to "remit, at specified rates," specified contributions, dues assessments, and defense fund payments to Plaintiffs based on each "straight and double time hour of work performed by those employees covered by the [CBAs]."  Compl. ¶¶ 18-19; Steinberg Decl. ¶¶ 6-7; Ex. C.  Plaintiffs allege that Defendant failed to make contributions and pay the dues

assessments and defense fund payments owed under the CBA.[5]  *Id.* ¶¶ 30-31.  This is sufficient to state a claim under Section 301.  *See  Trac Constr. Grp.*, 2022 WL 7810540, at *3 ("[A]llegations that an employer failed to remit contributions according to the terms of an applicable collective bargaining agreement are sufficient to establish liability for breach of that agreement under the LMRA."); *Trustees of the Loc. 813 Ins. Tr. Fund v. A.A. Danzo Sanitation, Inc.*, No. 16-CV-318 (SJ) (SJB), 2018 WL 4268907, at *4 (E.D.N.Y. Aug. 8, 2018) (holding defendants liable under the LMRA for failing to make contributions to the funds, as required under the applicable collective bargaining agreement), *report and recommendation adopted*, 2018 WL 4266038 (E.D.N.Y. Sept. 5, 2018).

Plaintiff has therefore established that Defendant is liable for breach of the CBA.

### D.    Violation of ERISA § 515

Based on the same failure to make the required contributions, Plaintiffs also allege a violation of Section 515 of ERISA, 29 U.S.C. § 1145.  *See* Compl. ¶¶ 33-36.  Section 515 of ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145; *see also Flanagan*, 2015 WL 1042279, at *8 (noting that, under Section 515, "employers are required to pay fringe benefit contributions pursuant to an effective collective bargaining agreement").  To establish a violation of Section 515, Plaintiffs must show that

---

[5] A number of the allegations in the Complaint are plead upon information and belief.  *See, e.g.*, Compl. ¶¶ 26, 29-31, 34-35.  Allegations made upon information and belief are sufficient to hold a defendant liable where such allegations state facts primarily within the defendant's knowledge.  *See, e.g., Flanagan v. Marco Martelli Assocs., Inc.*, No. 13-CV-6023 (ADS) (AKT), 2015 WL 1042279, at *7-8 (E.D.N.Y. Mar. 9, 2015) (collecting cases) (entering default judgment where failure to remit contributions was plead on information and belief).

Defendant (1) is an employer; (2) is bound by a CBA that required payment of contributions; and (3) failed to make those contributions. *See, e.g.*, *Health & Welfare Fund of the United Food & Com. Workers Loc. 2013, AFL-CIO By Carotenuto v. Precision Abstract, LLC*, No. 16-CV-4690 (AMD) (SMG), 2017 WL 4325713, at *3 (E.D.N.Y. May 19, 2017) (analyzing liability under Section 515), *report and recommendation adopted*, 2017 WL 4296740 (E.D.N.Y. Sept. 26, 2017).

Here, Defendant is alleged to be an employer within the meaning of ERISA, (Compl. ¶ 16), and the Funds are alleged to be employee benefit plans as defined by ERISA (*id.* ¶ 9). Plaintiffs, as they do for their LMRA claim, allege that the CBA obligated Defendant to make benefit contributions, which it failed to do. *Id.* ¶ 34. This is sufficient to state a claim under Section 515. *See, e.g.*, *Danzo Sanitation*, 2018 WL 4268907, at *3 (recommending that the employer's failure to make contributions pursuant to a collective bargaining agreement "constitutes a violation of ERISA"); *Finkel v. Omega Commc'n Servs., Inc.*, 543 F. Supp. 2d 156, 160 (E.D.N.Y. 2008) ("The allegations in plaintiff's complaint establish the elements of liability required to state a claim under section 515 of ERISA . . . Plaintiff alleges that defendant entered into an agreement with the Union under which defendant was obligated to make contributions to the ERISA Plans and that defendant failed to make such contributions.").

Based on the foregoing, this Court respectfully recommends that the Court grant Plaintiffs' Motion for Default Judgment as to liability under ERISA and the LMRA.

## VI. **Damages**

As Defendant's liability has been established, the Court turns to evaluate damages. "While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. "Rather, [t]he [C]ourt must be satisfied that Plaintiff has met the burden of proving damages to the

[C]ourt with reasonable certainty." *Balhetchet v. Su Caso Mktg. Inc.*, No. 19-CV-4475 (PKC) (SJB), 2020 WL 4738242, at *3 (E.D.N.Y. Aug. 14, 2020) (quotations and citation omitted).  Fed. R. Civ. P. 55(b)(2) provides that "on the matter of damages 'the court may conduct such hearings or order such references as it deems necessary and proper'[;] [t]he rule 'allows but does not require the district judge to conduct a hearing.'" *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53 (2d Cir. 1993) (citations omitted); see also Fed. R. Civ. P. 55(b)(2).

Here, the facts alleged are not sufficiently complicated to warrant an evidentiary hearing. *See W. Heritage Ins. Co. v. Jacobs Dev. Corp.*, No. 12-CV-5718 (NGG) (LB), 2014 WL 297792, at *4 (E.D.N.Y. Jan. 27, 2014) (noting that district courts are not required to hold hearings where "affidavits and other documentary evidence can suffice") (*quoting Chanel, Inc. v. Louis*, No. 06-CV-5924 (ARR) (JO), 2009 WL 4639674, at *4 (E.D.N.Y. Dec. 7, 2009)).  As described below, Plaintiffs seek: (1) an order requiring Defendant to provide its books and records for an audit for the period of July 29, 2020 through June 30, 2023; (2) an order affording Plaintiffs the opportunity to seek further monetary relief in the event that a deficiency is identified as a result of said audit; (3) attorneys' fees; and (4) costs.  *See* Dkt. No. 12-1.

### A.    Audit Demand

ERISA provides that a court may award such "legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E).  "Such relief necessarily includes an injunction compelling defendants to submit to an audit of its financial records, as required by the terms of the CBAs." *Lanzafame v. Toquir Contracting, Inc.*, 545 F. Supp. 2d 255, 259 (E.D.N.Y. 2007) (collecting cases).  Likewise, under the LMRA, "courts may enforce a union's contractual right to audit an employer's books and records." *Annuity, Welfare , & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Engineers Loc. 15, 15A, 15C & 15D, AFL-CIO by*

14

*Callahan v. Getty Contracting, LLC*, No. 18-CV-1450 (CBA), 2018 WL 7076168, at *4 (E.D.N.Y. Oct. 5, 2018), *report and recommendation adopted*, 2018 WL 7076162 (E.D.N.Y. Dec. 12, 2018); *see Mason Tenders Dist. Council of Greater New York v. Concore Equip. Inc.*, No. 10-CV-4227 (RWS), 2013 WL 5303756, at *4 (S.D.N.Y. Sept. 20, 2013) (holding that the court had subject matter jurisdiction, pursuant to the LMRA, over claim brought by union to enforce audit requirements).

Accordingly, this Court respectfully recommends that Plaintiffs' request for an order directing Defendant to comply with an audit of its books and records for the time period July 29, 2020 through June 30, 2023 should be granted.

### B.    Unpaid Contributions and Other Relief

Plaintiffs seek the opportunity to return to this Court to seek a judgment in the amount of the unpaid contributions that they are owed, plus interest, liquidated damages, audit costs, and future attorneys' fees and costs. *See* Dkt. No. 15, at 16-17. A plaintiff who has established liability under Section 515 is entitled to an award of: "(1) the amount of unpaid contributions, (2) interest on the unpaid contributions, (3) liquidated damages, (4) reasonable attorney's fees and costs, and (5) such other legal and equitable relief as the court deems appropriate." *Lanzafame*, 545 F. Supp. 2d at 259 (citing 29 U.S.C. § 1132(g)(2)); *see also Iron Workers Dist. Council of W.N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1505–08 (2d Cir. 1995).

An audit of Defendant's books and records has not yet been conducted. Compl. ¶ 27; Dkt. No. 13 ¶ 9. There is, therefore, "no basis [at this time] for awarding these damages." *Annuity, Pension, Welfare & Training Funds of Int'l Union of Operating Engineers Loc. 14-14B, AFL-CIO v. Marbro Realty Co. Inc.*, No. 11-CV-5722 (FB) (RER), 2012 WL 3536499, at *6 (E.D.N.Y. July

16, 2012) (quoting *Annuity, Pension, Welfare, & Training Funds of Int'l Union of Operating Engineers, Loc. 14-14B, AFL-CIO v. A.J.S. Trucking & Excavating Corp.*, No. 06-CV- 0701 (NG) (JMA), 2007 WL 539152, at \*4 (E.D.N.Y. Feb. 16, 2007), *report and recommendation adopted*, 2012 WL 3542317 (E.D.N.Y. Aug. 14, 2012)).

Nevertheless, courts have allowed similarly-situated plaintiffs to petition the Court to amend the judgment to include this recovery. *See, e.g.*, *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers, Loc. 15, 15A, 15C & 15D, AFL-CIO v. Rizzo Env't Servs. Corp.*, No. 22-CV-00556 (NGG) (LB), 2022 WL 1460585, at \*5 (E.D.N.Y. May 9, 2022) ("Upon the completion of the audit, plaintiff should be permitted to apply to this Court for additional relief as provided for under ERISA and the LMRA.");[6] *Midwest REM Enters., Inc.*, 2021 WL 4341416, at \*6 (collecting cases); *cf. Trustees of the Plumbers Loc. Union No. 1 Welfare Fund*, 2017 WL 3927491, at \*2-3 (recommending that the Court "toll Plaintiffs' claims for damages pursuant to that audit for one year upon the completion of the audit.").

Accordingly, this Court respectfully recommends that following the audit, Plaintiffs should be permitted to seek an amended judgment against Defendant for delinquent contributions determined to be due and owing, along with any requests for interest, liquidated damages, audit costs, and future attorneys' fees and costs. *See Annuity, Pension, Welfare & Training Funds of Int'l Union of Operating Engineers Loc. 14-14B, AFL-CIO*, 2012 WL 3536499, at \*6 (recommending "that if after completion of the audit, Plaintiffs determine that [the defendant entity] failed to properly contribute to the [f]unds, then Plaintiffs should be permitted to ask the Court for additional relief, with proper evidentiary support.").

---

[6] As a procedural matter, the undersigned notes that, as in *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers, Loc. 15, 15A, 15C & 15D, AFL-CIO*, 2022 WL 1460585, should this Report and Recommendation be adopted, the undersigned respectfully recommends that the Clerk of the Court mark the case "closed" on the docket; doing so would not preclude Plaintiffs from seeking an amended judgment.

### C.    Attorneys' Fees

Plaintiffs seek an award of attorneys' fees in the amount of $2,821.00, which represents 6.5 hours of work performed at an hourly rate of $434.00.  Steinberg Decl. ¶¶ 13, 16.

Pursuant to Section 502 of ERISA, where an action is brought by a fiduciary to enforce Section 515 of ERISA, the court "shall award . . . reasonable attorney's fees . . . to be paid by the defendant." 29 U.S.C. § 1132(g)(2)(D).  The Trust Agreements also provide for attorneys' fees if the funds must litigate to enforce payment obligations.  *See* Steinberg Decl. ¶ 10 (citing applicable provisions of Trust Agreements).  Plaintiffs brought this lawsuit to enforce payment obligations under ERISA, the CBA, and the Trust Agreements.  Plaintiffs are therefore entitled to attorneys' fees incurred to date.

In assessing whether legal fees are reasonable, a court must determine the "presumptively reasonable fee" for an attorney's services by examining what a reasonable client would be willing to pay.  *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 183-84 (2d Cir. 2008).  To calculate the presumptively reasonable fee, a court must first determine a reasonable hourly rate for the legal services performed.  *Id.*  The next step is to determine the reasonableness of the hours expended by counsel.  *See, e.g.*, *Labarbera v. Empire State Trucking, Inc.*, No. 07-CV-669 (SJ) (RML), 2008 WL 746490, at *4 (E.D.N.Y. Mar. 19, 2008).  The number of hours spent on a lawsuit are considered unreasonable if they are "excessive, redundant, or otherwise unnecessary."  *Labarbera v. Frank J. Batchelder Transp. LLC*, No. 08-CV-3387 (SJ) (JMA), 2009 WL 240521, at *4 (E.D.N.Y. Feb. 2, 2009) (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)).

Turning first to the reasonable hourly rate, the Court examines the experience and qualifications of counsel seeking the fee award.  In his declaration, Plaintiffs' counsel, James

Steinberg, states that he has practiced ERISA-related litigation since 1995 and is a partner at Brady McGuire & Steinberg, P.C.  Steinberg Decl. ¶¶ 1, 13.  He attaches documentation summarizing the work performed and time spent on this matter.  *See id.* ¶ 15; Ex. J.  His regular hourly billing rate is $434.00.  Steinberg Decl. ¶ 13.[7]

In ERISA matters, courts in the Eastern District of New York have approved hourly rates for partners from $200 to $450 per hour, including hourly rates for Mr. Steinberg, that are higher than his current rate of $434.00 hourly rate.  *See, e.g.*, *Annuity, Pension, Welfare & Training Funds of the Int'l Union of Operating Engineers, Loc. 14-14B, AFL-CIO v. Superior Site Work, Inc.*, No. 15-CV-543 (MKB), 2017 WL 639248, at *7 (E.D.N.Y. Feb. 16, 2017) (approving Mr. Steinberg's requested rate of $350.00 per hour); *Annuity , Pension, Welfare & Training Funds of I.U.O.E. Loc. 14-14 B, AFL-CIO by Christian v. Falcon Steel Co.*, No. 16-CV-0020 (RRM), 2016 WL 8465987, at *5 (E.D.N.Y. Apr. 13, 2016) (approving Mr. Steinberg's requested rate of $360.00 per hour), *report and recommendation*, 2017 WL 945851 (E.D.N.Y. Mar. 9, 2017).  Accordingly, the Court finds that the rate of $434 an hour requested by Mr. Steinberg is reasonable.

Turning next to the reasonableness of the time expended, according to the billing records submitted, counsel spent 6.5 hours drafting and filing the complaint and motion for default judgment.  Steinberg Decl. ¶ 16; Ex. J.  These hours are within the range of hours expended in similar default judgment cases.  *See, e.g.*, *Health & Welfare Fund of the United Food & Com. Workers Loc. 2013, AFL-CIO by Carotenuto v. Senior Home Care, Inc.*, No. 21-CV-673 (ENV), 2021 WL 7906557, at *7 (E.D.N.Y. Sept. 20, 2021) (approving 6 hours of work performed by Steinberg); *Falcon Steel Co.*, 2016 WL 8465987, at *5 (approving 6.5 hours of work performed by Steinberg); *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l*

---

[7] Although Mr. Christian is also listed on the docket in this case, Mr. Steinberg is the only attorney seeking fees herein. *See* Dkt. No. 13 and attachments.

*Union of Operation Engineers, Loc. 15, 15A, 15C, 15D, AFL-CIO v. A.G.*, No. 13-CV-3590 (ENV) (SMG), 2014 WL 354647, at \*6 (E.D.N.Y. Jan. 31, 2014) (approving 7.25 hours of Steinberg's work).  The Court therefore finds the hours expended to be reasonable.

Accordingly, this Court respectfully recommends that Plaintiffs be awarded $2,821.00 in attorneys' fees, which consists of 6.5 hours at a rate of $434.00 per hour.

**D.    Costs**

Plaintiffs also seek $587.00 in costs for commencing the action and serving the Summons and Complaint on Defendant.  Steinberg Decl. ¶ 10.  Plaintiffs are entitled to recover "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (quotations and citation omitted). Only those costs that are tied to "'identifiable, out-of-pocket disbursements'" are recoverable. *Moon v. Gab Kwon*, No. 99-CV-11810 (GEL), 2002 WL 31512816, at \*8 (S.D.N.Y. Nov. 8, 2002) (quoting *Kuzma v. I.R.S.*, 821 F.2d 930, 933-34 (2d Cir. 1987)).

Although no invoices are submitted as evidence, the filing fee is recoverable because the docket indicates the filing fee was paid.  *See* Dkt. No. 2; *see also Shalto v. Bay of Bengal Kabob Corp.*, No. 12-CV-920 (KAM) (VMS), 2013 WL 867420, at \*2 (E.D.N.Y. Mar. 7, 2013) (filing fees are recoverable without supporting documentation if verified by the docket).  Plaintiffs substantiated the service of process fees with the receipt.  *See* Steinberg Decl., Ex. K.

Accordingly, this Court respectfully recommends that Plaintiffs be awarded costs in the amount of $587.00.

**VII.    Conclusion**

For the reasons stated, this Court respectfully recommends that Plaintiffs' motion for default judgment be granted against Defendant, and that Defendant be ordered to: (1) submit to an

audit of its books and records, to wit: its tax forms 941s; quarterly payroll tax forms, also known as NYS-45 tax forms; corporate payroll records (including information identifying hours paid and gross wages); cash disbursements records; tax forms W-2s; payroll reports (provided to the union or fund office, if applicable); and canceled checks; for the time period of July 29, 2020 through June 30, 2023; (2) pay Plaintiffs $2,821.00 in attorneys' fees; and (3) pay Plaintiffs $587.00 in costs.  This Court further respectfully recommends that following the audit, Plaintiffs should be permitted to seek an amended judgment against Defendant for any delinquent contributions plus interest, liquidated damages, audit costs, and attorneys' fees and costs.

A copy of this Report and Recommendation is being electronically served on counsel.  This Court directs Plaintiffs' counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail to Defendant and to file proof of service on ECF on or before January 16, 2024.

Copies shall be served at the following addresses:

CM Ashland Construction Corp.
40 Tudor Drive
Clark, New Jersey 07066

Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days).  Any requests for an extension of time for filing objections must be directed to Judge Donnelly.  Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010);

*Kotlyarsky v. United States Dep't of Just.*, No. 22-2750, 2023 WL 7648618 (2d Cir. Nov. 15, 2023); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

      SO ORDERED.

Dated: Brooklyn, New York
      January 12, 2024

                                          _/s/ Joseph A. Marutollo_
                                          JOSEPH A. MARUTOLLO
                                        United States Magistrate Judge